# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)   RICKEY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 20-cv-075-SPS |
| | ) | |
| (1)   CITY OF MUSKOGEE, OKLAHOMA | ) | JURY TRIAL DEMANDED |
| (2)   ROBERT "BOB" LYNCH, and | ) | ATTORNEY'S LIEN CLAIMED |
| (3)   JEREMY JENKINS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW**, the Plaintiff, Rickey Davis, and for his Complaint against the above-named Defendants, states and alleges as follows:

## PARTIES

1. Plaintiff Rickey Davis ("Plaintiff" or "Mr. Davis") is an individual and a resident of Muskogee County, Oklahoma.

2. Defendant City of Muskogee is a municipal corporation and political subdivision of the State of Oklahoma, that was, at all times pertinent hereto, the employer of the individual Defendants, Robert "Bob" Lynch and Jeremy Jenkins. In addition, the City is and was at all times relevant to this Complaint responsible for the policies, practices, and customs of the Muskogee Police Department ("MPD"), and the training, supervision and discipline of MPD officers.

3. Defendant Robert "Bob" Lynch ("Officer Lynch" or "Lynch") is a resident of Muskogee County, State of Oklahoma. Lynch was, at all times relevant hereto, acting

1

under color of state law, and in the scope of his employment as an employee and/or agent of the City of Muskogee/MPD.

4. Defendant Jeremy Jenkins ("Sergeant Jenkins" or "Jenkins") is a resident of Muskogee County, State of Oklahoma. Jenkins was, at all times relevant hereto, acting under color of state law, and in the scope of his employment, as an employee and/or agent of the City of Muskogee/MPD.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth Amendment and/or Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under the color of law.

6. This Court also has original jurisdiction under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and Title II of the Americans With Disabilities Act.

7. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy arising under the United State Constitution and federal law.[1]

---

[1] Plaintiff submitted a notice of a claim, pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 *et. seq.*, to the City of Muskogee by letter dated September 17, 2019. No action was taken by Defendants to admit or deny this claim within 90 days. Plaintiff thereafter timely filed this Complaint.

8. The acts complained of herein occurred in Rogers County, Oklahoma. Jurisdiction and venue are thus proper under 28 U.S.C. §§ 116(a) and 1391(b).

## FACTUAL BACKGROUND

- **Facts Specific to Plaintiff**

9. Mr. Davis is an African American male with no criminal record. At the time of the incident forming the basis of this lawsuit, Mr. Davis was 51 years old.

10. At all pertinent times, Mr. Davis held a valid license to legally carry a concealed firearm.

11. Mr. Davis has a significant history of kidney disease. In September of 2017, Mr. Davis was subjected to a kidney transplant procedure. During the surgery, Mr. Davis' kidney burst, requiring additional invasive treatment and extended hospitalization.

12. In October of 2017, Mr. Davis was injured in a car accident, causing an infection of his kidney. Mr. Davis required yet another surgery to address the infection surrounding the kidney.

13. In March of 2018, Mr. Davis went under the knife again due to the history of dialysis, injections and "IVs" in his left forearm. In particular, an "AV fistula" was placed in Mr. Davis' forearm. An AV fistula is a connection, made by a surgeon, of an artery to a vein. An AV fistula causes extra pressure and extra blood to flow into the vein, making it grow larger. The larger vein provides easier and more reliable access to blood vessels. This enables kidney patients, like Mr. Davis, to withstand repeated needle insertions for the purposes of dialysis.

14.     A surgically-created AV fistula, such as Mr. Davis', includes a shunt graft in the forearm. These shunts can be damaged with trauma causing a narrowing of the fistula and blockages, such as blood clots. A malfunctioning AV fistula can result in serious medical complications, including heart attack.

15.     On September 18, 2018, the incident that is the subject of this lawsuit occurred.

16.     On the afternoon of September 18, Mr. Davis received a phone call from Judy Peal, a third cousin. During the call, Ms. Peal accused Mr. Davis' then-seventeen-year-old daughter, Shalayna, of stealing $700 from Ms. Peal's adult daughter, Aneshia. Ms. Peal stated that she and Aneshia were about to "f**k [Shalayna] up" were about to "kill" her.

17.     After receiving this call, Mr. Davis was gravely concerned about the safety of his daughter, and began driving over to the street where Ms. Peal lived. Mr. Davis called "9-1-1" and told the dispatcher that two women were assaulting his daughter and gave the dispatcher the location. Mr. Davis also informed the dispatcher who he was, that he had a concealed carry license and that he was carrying a gun.

18.     Upon arriving in Ms. Peal's neighborhood, Mr. Davis saw Shalayna running down the street (12th Street). Clearly frightened for her life, Shalayna got into the car and told Mr. Davis that Ms. Peal, Aneshia and Ms. Peal's grandson, Kyron, had physically attacked her, strip searched her, taken her purse and phone, dragged her out of the house and threatened to kill her.

19. Mr. Davis initially drove away from the scene, but then went back to retrieve his daughter's purse and phone.

20. Upon his return to the scene, Ms. Peal, Aneshia and Kyron aggressively approached Mr. Davis' vehicle. Kyron got on the car and began beating on it. Mr. Davis got out of the car and Ms. Peal, Aneshia and Kyron then physically assaulted him and threatened to kill him and his family. Mr. Davis loudly told them he had a gun and warned them to get back. Mr. Davis' firearm was in his hand by his side.

21. It was around this point that Officer Lynch, who is a K-9 officer, arrived and drew his taser on Mr. Davis. Mr. Davis informed Lynch that he had a firearm which he was licensed to carry. Mr. Davis' firearm was at his side in his hand. Officer Lynch then drew his gun pointing at Mr. Davis. Lynch screamed at Mr. Davis to "drop the gun!" Mr. Davis immediately complied and dropped his gun in the street.

22. With his weapon still pointed at Mr. Davis, Officer Lynch screamed at Mr. Davis – who was now unarmed -- to "get down on the ground!" Mr. Davis replied that he could not get on the ground due to his kidney transplant. Officer Davis said that he did not care about Mr. Davis's kidney, cursed at Mr. Davis and again commanded that he "get down on the ground!" Fearful that Officer Lynch would shoot him if he did not follow his commands, Mr. Davis got down onto the pavement.

23. It was at this approximate point that Sergeant Jenkins arrived on the scene. Jenkins approached Mr. Davis with his weapon drawn.

24. Mr. Davis begged Officer Lynch and Sergeant Jenkins not to handcuff him behind his back because of his kidney transplant, restricted left arm and medical devices

5

(i.e., the AV fistula and shunt). Officer Lynch and Sergeant Jenkins replied that they did not "give a damn" and did not "give a f**k". Lynch, Jenkins or both then snapped Mr. Davis' left arm behind his back and applied handcuffs. Mr. Davis again informed the Officers on the scene, including Lynch and Jenkins, that he could not have his arm behind his back as it was restricted with medical devices and because he's had a kidney transplant. Mr. Davis complained that the handcuffs were too tight, and pleaded with the Officers, including Lynch and Jenkins, to take the cuffs off. Lynch, Jenkins or both then snapped Mr. Davis' right arm behind his back. Jenkins then tightened the cuffs, causing Mr. Davis more pain and damage to the AV fistula and shunt.

25. Jenkins told Mr. Davis to roll over on his back. Davis replied that he could not roll over because of the cuffs behind his back. Officer Lynch and Sergeant Jenkins physically rolled Mr. Davis over into a sitting position, and then grabbed and pulled him off the ground.

26. Next, Jenkins walked Mr. Davis to the squad car. Mr. Davis again begged Jenkins to take the cuffs off, or at least cuff him in the front due to his medical condition. Jenkins flatly refused, saying "we don't do that!" Mr. Davis asked if he could sit with his feet out the door, again citing his kidney transplant. Jenkins refused this request as well, telling Mr. Davis he had to get all the way in the car. Officer Jenkins placed Mr. Davis in the car with his arms cuffed behind his back which caused him additional and severe pain, due to added pressure on the AV fistula and shunt. There was no air conditioning in the car and Mr. Davis had difficultly breathing.

27. After 45 minutes in the car, Davis was allowed to get out and the cuffs were taken off. An EMT on the scene spoke with Davis about his medical history and looked at his left arm. By this point, the fistula was visibly swollen, disfigured and protruding from his arm. It was clear that something was very wrong.

28. Because Mr. Davis committed no crime, he was not taken to jail or charged. Rather, the MPD Officers told him that he could go home.

29. After Mr. Davis returned home, on the night of September 18, his left arm continued to swell and cause him significant pain. He went to the Hospital in Wagoner that night for treatment. His condition did not improve.

30. By Friday, September 21, 2018, Mr. Davis' left arm was turning black and the fistula was making a bubbling noise. The pain was excruciating. Mr. Davis was admitted to Saint John, where it was determined that the AV fistula in his left arm had burst. This required additional invasive surgical intervention to repair the damaged fistula and further hospitalization. Mr. Davis feared that he would die in a hospital bed.

31. Lynch and Jenkins' conduct toward Mr. Davis as described herein constitutes excessive and objectively unreasonable use of police force.

32. Lynch and Jenkins' conduct toward Mr. Davis as described herein also constitutes failure to accommodate Mr. Davis' disability.

33. Lynch and Jenkins' conduct toward Mr. Davis as described herein further constitutes deliberate indifference to a serious medical need.

### ■ Municipal Policies, Practices and/or Customs

34. There is an affirmative link between the aforementioned excessive force utilized by Officers Lynch and Jenkins and policies, practices and/or customs which the City of Muskogee promulgated, created, implemented and/or possessed responsibility for.

35. On information and belief, the City of Muskogee/MPD failed to adequately train and supervise its officers, including Lynch and Jenkins, with respect to, *inter alia*: the arrest of, and use of police force on, citizens with a disability; reasonable accommodations for disabled arrestees/detainees; the arrest of, and use of police force on, citizens with significant injuries/medical conditions; the use of force continuum as it pertains to citizens like Mr. Davis; proper handcuffing technique for citizens with known injuries, disabilities or medical conditions.

36. Moreover, there is an established and unabated pattern of excessive use of police force by MPD evincing a municipal "custom".

37. In 2012, this Court denied summary judgment for the City on the plaintiff's municipal liability theory in *Chaplin v. City of Muskogee*, No. CIV-11-158-RAW, 2012 WL 245230, at *3–4 (E.D. Okla., Jan. 26, 2012). In denying summary judgment, the Court found that the plaintiff had raised genuine issues of material fact as to the City's policies and customs, including its failure to train and supervise, relating to the use of police force.

38. In 2013, a federal jury returned a verdict finding that Muskogee Police Officer Troy Buller violated the constitutional rights of Muskogee resident Darryle Chatman. The jury concluded that officer Buller performed an unlawful investigatory detention when he stopped Mr. Chatman for walking across a street, that he lacked

probable cause to arrest Mr. Chatman for a jaywalking offense, and that Buller used unlawful excessive force in making the arrest.

39. On January 8, 2012, Rodney Walker was unlawfully attacked by a police dog at the direction of MPD Officers, causing him great and permanent injury.

40. On August 19, 2011, MPD Officer Josh Smith deployed violent force on citizen Travis Phillips, at a time when Mr. Phillips was unarmed and posed no threat to the officer or anyone else.

41. In October of 2016, three MPD officers were disciplined, in part, for failing to provide medical attention for an elderly woman, Geneva Smith, who was pepper sprayed. Video of the incident suggests that the officers also used excessive force.

42. The City of Muskogee/MPD knew, must have known or should have known that -- due its obviously inadequate training and supervision -- unconstitutional conduct toward arrestees/detainees by MPD personnel was probable, but failed to take reasonable measure to alleviate the risks of harm.

## CAUSES OF ACTION

### CLAIM I
### EXCESSIVE USE OF FORCE
### (Fourth and/or Fourteenth Amendment; 42 U.S.C. § 1983)

■ **Individual Liability and Underlying Violation**

43. Paragraphs 1-43 are incorporated herein by reference.

44. At the time of the complained of events, Mr. Davis, as a free person, had a clearly established constitutional right under the Fourth and/or Fourteenth Amendment

to be secure in his person and free from objectively unreasonable seizure through excessive force to injure him and his bodily integrity.

45.     Any reasonable officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

46.     In the totality of the circumstances, at the time that the police force described herein was used by Officers Lynch and Jenkins, Mr. Davis was: 1) unarmed; 2) not fleeing; 3) not resisting; and 4) posed no threat to himself, the Defendants, or anyone else.

47.     Moreover, Lynch and Jenkins knew that Mr. Davis was particularly vulnerable as a kidney transplant patient and as a person with a medical device in his left arm.

48.     The use of force by Defendant Lynch under the circumstances described herein was excessive and objectively unreasonable.

49.     The use of force by Defendant Jenkins under the circumstances described herein was excessive and objectively unreasonable.

50.     Defendant Lynch applied objectively unreasonable and excessive physical force on Plaintiff, thereby causing him serious bodily injures, medical expenses, as well as mental pain and anguish.

51.     Defendant Jenkins applied objectively unreasonable and excessive physical force on Plaintiff, thereby causing him serious bodily injures, medical expenses, as well as mental pain and anguish.

52.     As a direct proximate result of Defendants' unlawful conduct, Mr. Davis suffered actual physical injuries, medical expenses, mental and physical pain and suffering

and other damages and losses as described herein entitling him to recover compensatory and special damages in amounts to be determined at trial.

■ **Municipal Liability (City of Muskogee)**

53. Paragraphs 1-52 are incorporated herein by reference.

54. There is an affirmative link between the aforementioned excessive force utilized by Officers Lynch and Jenkins and policies, practices and/or customs which the City of Muskogee promulgated, created, implemented and/or possessed responsibility for.

55. On information and belief, the City of Muskogee/MPD failed to adequately train and supervise its officers, including Lynch and Jenkins, with respect to, *inter alia*: the arrest of, and use of police force on, citizens with a disability; reasonable accommodations for disabled arrestees/detainees; the arrest of, and use of police force on, citizens with significant injuries/medical conditions; the use of force continuum as it pertains to citizens like Mr. Davis; proper handcuffing technique for citizens with known injuries, disabilities or medical conditions.

56. Moreover, there is an established and unabated pattern of excessive use of police force by MPD evincing a municipal "custom".

57. In 2012, this Court denied summary judgment for the City on the plaintiff's municipal liability theory in *Chaplin v. City of Muskogee,* No. CIV-11-158-RAW, 2012 WL 245230, at *3–4 (E.D. Okla., Jan. 26, 2012). In denying summary judgment, the Court found that the plaintiff had raised genuine issues of material fact as to the City's policies and customs, including its failure to train and supervise, relating to the use of police force.

11

58. In 2013, a federal jury returned a verdict finding that Muskogee Police Officer Troy Buller violated the constitutional rights of Muskogee resident Darryle Chatman. The jury concluded that officer Buller performed an unlawful investigatory detention when he stopped Mr. Chatman for walking across a street, that he lacked probable cause to arrest Mr. Chatman for a jaywalking offense, and that Buller used unlawful excessive force in making the arrest.

59. On January 8, 2012, Rodney Walker was unlawfully attacked by a police dog at the direction of MPD Officers, causing him great and permanent injury.

60. On August 19, 2011, MPD Officer Josh Smith deployed violent force on citizen Travis Phillips, at a time when Mr. Phillips was unarmed and posed no threat to the officer or anyone else.

61. In October of 2016, three MPD officers were disciplined, in part, for failing to provide medical attention for an elderly woman, Geneva Smith, who was pepper sprayed. Video of the incident suggests that the officers also used excessive force.

62. The City of Muskogee/MPD knew, must have known or should have known that -- due its obviously inadequate training and supervision -- unconstitutional conduct toward arrestees/detainees by MPD personnel was probable, but failed to take reasonable measure to alleviate the risks of harm.

63. The City of Muskogee/MPD knew, must have known or should have known that -- due its obviously inadequate training and supervision -- unconstitutional conduct toward arrestees/detainees by MPD personnel was probable, but failed to take reasonable measure to alleviate the risks of harm.

64. The City of Muskogee, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to citizens', including Mr. Davis's, health and safety.

65. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Davis suffered injuries and damages as alleged herein.

## CLAIM II

## NEGLIGENCE
## (CITY OF MUSKOGEE)

66. Paragraphs 1 to 65 are incorporated herein by reference.

67. In Oklahoma, "[a] defendant is generally said to owe a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks that make the conduct unreasonably dangerous." *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't*, 230 P.3d 869, 878 (Okla. 2010).

68. Because, however, the act of making an arrest necessarily involves some risk of harm to the arrestee, "a police officer has a special dispensation from the duty of ordinary care not to endanger others." *Morales*, 230 P.3d at 880.

69. In particular, "[a] police officer's duty … is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest." *Id.*

70. Here, Defendants Lynch and Jenkins owed a duty to Mr. Davis to use only such force in securing his cooperation as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the incident.

71. Defendants Lynch and Jenkins violated and breached that duty by using objectively unreasonable and excessive force as described herein.

72. Defendants Lynch and Jenkins also owed Mr. Davis a duty to assure that Mr. Davis's obvious and serious medical needs were met.

73. Defendants Lynch and Jenkins breached their duty of assuring that Mr. Davis's obvious and serious medical needs were met.

74. As a direct proximate result of Lynch and Jenkins's negligence, Mr. Davis suffered actual physical injuries, medical expenses, mental and physical pain and suffering and other damages and losses as described herein entitling Plaintiff to recover compensatory and special damages in amounts to be determined at trial.

75. At all pertinent times, Defendants Lynch and Jenkins were acting within the scope of their employment and the City of Muskogee is vicariously liable for their negligent use of excessive force.

## CLAIM III
## AMERICANS WITH DISABILITIES ACT ("ADA")

76. Paragraphs 1 to 75 are incorporated herein by reference.

77. Mr. Davis was a qualified individual with a disability within the meaning of the Americans With Disabilities Act.

14

78. Mr. Davis's disabilities (*e.g.,* being a kidney transplant patient, having a medical device in his arm, and requiring dialysis) substantially limited one or more major life activity. Mr. Davis had a history of such an impairment.

79. The Defendant, City of Muskogee, is a public entity covered by Title II of the Americans With Disabilities Act. 42 U.S.C. § 12131(1). As a covered public entity, the Americans With Disabilities Act prohibits the City from discriminating against individuals with disabilities. 42 U.S.C. §§ 12131 and 12132.

80. The Muskogee Police Department is a covered instrumentality and agency of the City under Title II of the Americans With Disabilities Act. 42 U.S.C. § 12131(1)(B). As a covered instrumentality and agency, the Americans With Disabilities Act prohibits the Muskogee Police Department from discriminating against individuals with disabilities. 42 U.S.C. §§ 12131 and 12132.

81. Title II of the Americans With Disabilities Act applies to all activities, services or programs of a covered public entity. 42 U.S.C. § 12132.

82. Police stops, detentions and arrests are subject to Title II of the Americans With Disabilities Act.

83. Title II of the Americans With Disabilities Act requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

84. Mr. Davis was intentionally subjected to discrimination by the City of Muskogee during the September 18, 2018 arrest/seizure and use of police force.

85. It was obvious -- and otherwise known to Officers Lynch and Jenkins -- that Mr. Davis was a kidney transplant patient and had a medical device surgically inserted in his left arm.

86. Mr. Davis was entitled to and in need of a reasonable accommodation in the form of alternative restraints, loosened handcuffs and restraints/cuffs in the front of his body before being taken into physical custody.

87. Still, Officers Lynch and Jenkins, intentionally or with deliberate indifference, proceeded to arrest Mr. Davis without accommodation for his disabilities.

88. The City's failure to reasonably accommodate Mr. Davis's disability led to him suffering significant injuries, including a worsening of his condition, surgical intervention, medical expenses, and unnecessary and extreme physical and mental pain and anguish.

## CLAIM IV
## DELIBERATE INDIFFERNCE TO A SERIOUS MEDICAL NEED
**(Fourteenth Amendment; 42 U.S.C. § 1983)**

89. Paragraphs 1 through 88 are incorporated herein by reference.

■ **Individual Liability and Underlying Violation**

90. The Fourteenth Amendment applies to an arrestee's claim of denial of medical care after his warrantless arrest and before he was taken to be booked into the county detention center. *See, e.g., Rife v. Okla. Dep't of Pub. Safety,* 854 F.3d 637, 641, 647 (10th Cir. 2017) (addressing arrestee's claim for denial of medical care following his arrest without a warrant).

91. To succeed on his Fourteenth Amendment claim, Mr. Davis must show deliberate indifference to his serious medical needs.

92. Officers Lynch and Jenkins were deliberately indifferent to Mr. Davis's serious medical needs.

93. It was obvious -- and otherwise known to Officers Lynch and Jenkins -- that Mr. Davis was a kidney transplant patient and had a medical device surgically inserted in his left arm.

94. Mr. Davis was entitled to and in need of a reasonable accommodation in the form of alternative restraints, loosened handcuffs and restraints/cuffs in the front of his body before being taken into physical custody.

95. Still, Officers Lynch and Jenkins, with deliberate indifference, proceeded to arrest Mr. Davis without accommodation for his disabilities.

96. This deliberate indifference to Mr. Davis's serious medical needs proximately caused him significant injuries, including a worsening of his condition, surgical intervention, medical expenses, and unnecessary and extreme physical and mental pain and anguish.

- **Municipal Liability (City of Muskogee)**

97. Paragraphs 1-96 are incorporated herein by reference.

98. There is an affirmative link between the aforementioned deliberate indifference and policies, practices and/or customs which the City of Muskogee promulgated, created, implemented and/or possessed responsibility for.

99. On information and belief, the City of Muskogee/MPD failed to adequately train and supervise its officers, including Lynch and Jenkins, with respect to, *inter alia*: the arrest of, and use of police force on, citizens with disabilities, serious injuries or medical conditions; reasonable accommodation for disabled arrestees; and assuring that serious medical needs of arrestees are met.

100. The City of Muskogee/MPD knew, must have known or should have known that -- due its obviously inadequate training and supervision -- unconstitutional conduct toward arrestees/detainees was probable, but failed to take reasonable measure to alleviate the risks of harm.

101. The City of Muskogee, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to citizens', including Mr. Davis's, health and safety.

102. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Davis suffered injuries and damages as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff prays this Court grant him the relief sought, including but not limited to actual and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

/s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
SMOLEN & ROYTMAN
701    Cincinnati Ave.
Tulsa, Oklahoma 74119
P: (918) 585-2667
F: (918) 585-2669

-and-

Chris W. Blankenship, OBA# 13572
Blankenship Law Firm, P.C.
P.O. Box69
Stigler, Oklahoma 74462
(918) 967-8542 - telephone
(918) 967-5018 - facsimile

***Attorneys for Plaintiff***